1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    Devier Avery, et al.,                           No. 2:19-cv-00924-KJM-AC

12                        Plaintiffs,                  ORDER

13         v.

14    Akima Support Operations,

15                        Defendant.

16

17         Plaintiff Devier Avery is pursuing wage and hour claims on behalf of a putative class

18    against defendant Akima Support Operations, LLC (ASO).[1]  The parties have reached a

19    settlement agreement, and the matter is before the court on the plaintiffs' unopposed motion for

20    preliminary approval of the settlement.  *See* Mot., ECF No. 30.  The court submitted the motion

21    /////

---

[1] Plaintiff originally brought claims against Akima, LLC, ASO, and unnamed doe defendants.  *See* First Am. Compl. (FAC) at 1, ECF No. 12.  The court dismissed defendant Akima, LLC in September 2019 after plaintiff agreed it was not a proper defendant.  *See* Order (September 24, 20019), ECF No. 20.  The court now dismisses the unnamed defendants.  If a defendant's identity is unknown when the complaint is filed, plaintiffs have an opportunity through discovery to identify him or her.  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  But the court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds.  *Id.*  The federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within 90 days of the complaint.  Fed. R. Civ. P. 4(m).  Here, more than 90 days have passed since the filing of this action.

1

without argument and **denies the motion without prejudice** for the reasons provided in this order.

## I.      BACKGROUND

Plaintiff Avery worked for ASO as a grounds maintenance worker in San Joaquin County from December 2017 to April 2018.  FAC ¶ 3.  Plaintiff alleges ASO undercompensated plaintiff and other class members for hours worked and wrongfully withheld timely pay and accurate, written wage statements.  *See id.* ¶¶ 2, 30–31, 36–60.

Plaintiff filed this lawsuit in California state court on April 3, 2019 against Akima, LLC, ASO and fifty unnamed doe defendants.  Compl. at 1, Not. of Removal Ex. A, ECF No. 1-3. Defendants timely removed this case to this district in May 2019 as the events took place on a federal enclave, namely the Tracy Defense Distribution Depot.  Not. of Removal at 2, ECF No. 1. Plaintiff amended his complaint in July 2019.  *See generally* FAC.  The operative complaint makes five claims on behalf of the class: (1) failure to compensate for all hours worked, (2) failure to provide accurate written wage statements, (3) failure to pay waiting time penalties, (4) unfair competition and (5) civil penalties under California Labor Code section 2699.  *Id.* ¶¶ 19–68.  The parties conducted some discovery before and after filing the amended complaint. Mot. at 2.  The parties eventually reached an agreement to settle on behalf of all "hourly, non-exempt employees of [ASO] who performed work for Defendant at the Tracy Defense Distribution Depot located in Tracy, California, any time between April 3, 2015 and March 1, 2020 . . . ."  Stip. of Settlement and Release (Stip.) ¶ 2.3.A, Mot. Ex. 1, ECF No. 30-2.

As of March 1, 2020, the class includes 54 individuals.  *Id.* ¶ 2.5.A.  ASO agrees to pay $74,500 to settle the action.  *Id.* ¶ 2.1.W.  Of that sum, the parties agree that one third, $24,833 may cover attorneys' fees, *id.* ¶ 2.5.B., $5,000 may be allocated to litigation costs of class counsel, *id.*, and $5,000 will be paid to the named plaintiff, *id.* ¶ 2.5.C.  The parties estimate $7,500 will be paid to administer the settlement.  *Id.* ¶ 2.5.D.  The settlement will also be reduced by a $5,000 civil penalty, seventy-five percent of which, $3,750, will go to the California Labor and Workforce Development Agency (LWDA) and twenty-five percent, $1,250, will go to the settlement class as required by the California Labor Code.  *Id.* ¶ 2.5.E; Cal. Lab. Code § 2699(j).

1    Defendant's share of state and federal payroll taxes will be calculated by the claims administrator

2    and paid separately by the defendant in addition to the settlement amount.  Stip. ¶ 2.7.B.  These

3    deductions would result in a net settlement amount of approximately $27,167, slightly more than

4    one-third the gross.[2]  *See* Proposed Order for Prelim. Approval at 3, Mot. Ex. 12, ECF No. 30-4.

5    The settlement payments to each class member will be based on the number of paychecks issued

6    to that member divided by the total number of paychecks issued to all settlement class members

7    multiplied by the net settlement amount.  Stip. ¶ 2.6

8           The parties propose that within seven days of an order granting preliminary approval,

9    defendant will provide the claims administrator, in an appropriate format, the names, last-known

10   mailing addresses, social security numbers, and number of paychecks issued to each settlement

11   class member.  *Id.* ¶ 2.12.A.  Within fourteen days of receiving defendant's information, the

12   notice of the class action settlement and hearing date will be sent to the class members.  *Id.*

13   ¶ 2.12.B.  The notice will be written in English and sent by first class mail.

14          According to the motion,

15                  [t]he Notice of Settlement shall set forth a brief description of the
16                  Action, provide the definition of the Settlement Class, inform
17                  Settlement Class Members of the nature and scope of the settlement
18                  of claims, set forth the Attorneys' Fees and Costs, disclose the
19                  Incentive Award to the Named Plaintiff, inform Settlement Class
20                  Members of their opportunity to be heard at the Final Fairness and
21                  Approval Hearing, inform Settlement Class Members of their right
22                  to submit an objection to any term of the settlement and/or to opt-
23                  out of the settlement and the procedures for doing so and explain
24                  the *res judicata* effects of not opting out.

25   Mot. at 6–7.  The Notice shall provide that class members may opt out by signing and delivering

26   a request "clearly stating their intention to be excluded from the settlement" within the notice

27   period.  Stip. ¶ 2.10.  The parties propose that the Notice clarify that any unclaimed funds escheat

28   to the State of California.  *Id.* ¶ 2.7.D.  The parties have not provided the Notice itself as an

29   attachment: rather the parties attached the letter sent to the LWDA.  *See* LWDA Letter, Mot. Ex.

30   A. & Ex. 2, ECF No. 30-2.

---

[2] The court subtracted all listed costs from the gross settlement of $74,500. $27,167 is approximately 36% of $74,500, or slightly more than one-third.

1   The plaintiff moves for class certification for settlement purposes only and moves for

2   preliminary approval of the class and collective claims and of the settlement agreement under

3   Federal Rule of Civil Procedure 23.  Mot. at 2.  The motion is unopposed and the court submitted

4   it without oral argument.

5   **II.    LEGAL STANDARD**

6   "Courts have long recognized that 'settlement class actions present unique due process

7   concerns for absent class members.'"  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935,

8   946 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998),

9   *overruled in part on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).  In

10   settlement classes, the class's motivations may not perfectly square with those of its attorneys.

11   *See id.*  An attorney representing a settlement class may be tempted to accept an inferior

12   settlement in return for a higher fee.  *Knisley v. Network Associates, Inc.*, 312 F.3d 1123, 1125

13   (9th Cir. 2002).  Likewise, defense counsel may be happy to pay an adversary a bit more if the

14   overall deal is better for the client.  *See id.*; *see also In re Gen. Motors Corp. Pick-Up Truck Fuel*

15   *Tank Products Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995) (noting criticism that settlement class

16   can be "a vehicle for collusive settlements that primarily serve the interests of defendants—by

17   granting expansive protection from law suits—and of plaintiffs' counsel—by generating large

18   fees gladly paid by defendants as a quid pro quo for finally disposing of many troublesome

19   claims.").  In addition, if the settlement agreement is negotiated before the class is certified, as it

20   was in this case, the potential for an attorney's breach of fiduciary duty looms larger still.

21   *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013).

22   As the Ninth Circuit has recognized, however, the "governing principles are clear, but

23   their application is painstakingly fact-specific," and the court normally sees only the final result

24   of the parties' bargaining.  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  "Judicial

25   review also takes place in the shadow of the reality that rejection of a settlement creates not only

26   delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved

27   for the putative class put at risk."  *Id.*  Federal courts have long recognized a "strong" policy in

28   /////

4

1  favor of settling class actions. *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 972 (E.D.

2  Cal. 2012) (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

3        Under Rule 23, before notice of a proposed settlement can be sent to a class, the court

4  must determine that it "will likely be able to" both (1) "certify the class for purposes of the

5  judgment on proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P.

6  23(e)(1)(B). The first requirement, likelihood of class certification, requires the plaintiffs to

7  satisfy the four prerequisites of Rule 23(a) and show their claim fits within one of the three

8  categories of Rule 23(b). *See Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir.

9  2020). The second requirement, likely approval under Rule 23(e)(2), focuses on the fairness of

10  the settlement for absent class members. The court evaluates preliminarily whether the proposed

11  settlement "is fair, reasonable, and adequate," considering several factors listed in the Rule, such

12  as whether the parties negotiated at arm's length and the terms of any agreement on fee awards.

13  *See* Fed. R. Civ. P. 23(e)(2)(A)–(D). Over the years, the Ninth Circuit has also listed several

14  "guideposts," "warning signs," and "red flags" for district courts to consider, such as the strength

15  of the plaintiffs' case and the amount of fees in proportion to the compensation to class members.

16  *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597,

17  611 & nn.18–19 (9th Cir. 2018), *cert. denied sub nom. Fleshman v. Volkswagen, AG*,

18  139 S. Ct. 2645 (2019).

19        For classes likely to be certified under Rule 23(b)(3), "the court must direct to class

20  members the best notice that is practicable under the circumstances, including individual notice to

21  all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The

22  notice may be made by "mail, electronic means, or other appropriate means." *Id.* Rule 23 also

23  imposes specific requirements on the contents of the notice. *See* Fed. R. Civ. P. 23(c)(2)(B)(i)–

24  (vii).

25  /////

26  /////

27  /////

28  /////

1    **III.    DISCUSSION**

2        **A.    Likelihood of Certification Under Rule 23(a) and (b)**

3        The parties have stipulated to provisional class certification. *See* Mot. at 13. Although

4    settlement is "relevant" for class certification, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619

5    (1997), the court must ensure that Rule 23 is satisfied for settlement classes just the same.

6        The first question here is whether certification is likely under Rule 23, which in turn

7    imposes four prerequisites: numerosity, commonality, typicality, and adequacy. Numerosity is

8    the first factor the court considers. Class litigation is desirable when claimants are "so numerous

9    that joinder . . . is impracticable." Fed. R. Civ. P. 23(a)(1). Joinder is impracticable when it is

10   inconvenient or difficult. *Smothers v. NorthStar Alarm Servs., LLC*, No. 17-00548, 2019 WL

11   280294, at *4 (E.D. Cal. Jan. 22, 2019). Although "no fixed number . . . satisfies the numerosity

12   requirement, as a general matter, a class greater than forty often satisfies the requirement, while

13   one less than twenty-one does not." *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536

14   (N.D. Cal. 2012). Here the class of 54 members is sufficiently numerous. *See* Stip. ¶ 2.6.

15       Commonality is the second prerequisite. To satisfy the commonality requirement, there

16   must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The "claims

17   must depend upon a common contention . . . of such a nature that it is capable of classwide

18   resolution—which means that determination of its truth or falsity will resolve an issue that is

19   central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Cases

20   that challenge "a system-wide practice or policy that affects all of the putative class members . . .

21   ." often satisfy this standard. *Franco v. Ruiz Food Prods., Inc.*, No. 10-02354, 2012 WL

22   5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th

23   Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)).

24   The standard is likely to be satisfied in this case. The class members are all former grounds

25   maintenance laborers who allege ASO wage and labor policies deprived them of all wages for

26   hours worked and other rights guaranteed by California law. FAC ¶ 2. Their complaint identifies

27   many common questions of law and fact. *See id.* ¶ 14–15. At this preliminary stage, the

28   commonality across these claims as pled suffices. *See Smothers*, 2019 WL 280294, at *4–5

6

1   (finding similar common questions about employer's policies and plaintiffs' wage and hour

2   claims under California law satisfied Rule 23(a)(2)).

3          The third prerequisite is typicality.  Typicality requires that "the claims or defenses of

4   representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).

5   This ensures "the interest[s] of the named representative align[] with the interests of the class."

6   *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting *Hanon v.*

7   *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  Claims and defenses are "'typical' if

8   they are reasonably coextensive with those of absent class members; they need not be

9   substantially identical."  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanon,*

10  976 F.2d at 1020).  "Measures of typicality include 'whether other members have the same or

11  similar injury, whether the action is based on conduct . . . not unique to the named plaintiffs, and

12  whether other class members have been injured by the same course of conduct.'"  *Torres*, 835

13  F.3d at 1141 (quoting *Hanon*, 976 F.2d at 508).  The named plaintiff's claims are likely to be

14  typical here because they rely on the same injuries based on the same alleged conduct, which is

15  allegedly identical for all members of the class.  Mot. at 15; *see also* FAC ¶¶ 15, 19–68.

16         Under the fourth prerequisite, due process requires that representatives of the proposed

17  class afford adequate representation to those class members who are absent.  *Hanlon*, 150 F.3d at

18  1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)).  Courts consider two questions: first,

19  whether there are any conflicts of interest between plaintiffs and other class members, and

20  second, whether the named plaintiffs and their counsel can be expected to "prosecute the action

21  vigorously on behalf of the class[.]"  *Id.*  First, nothing suggests the plaintiff's representation of

22  the class poses any conflicts of interest.  ASO subjected the named plaintiff and all class members

23  to the same policy: knowingly and intentionally failing to pay for pre-shift off the clock time

24  spent in a security check line.  FAC ¶¶ 30–34.  Second, the named plaintiff here has already

25  devoted many hours of his own time to this case, *see* David Spivak Decl. ¶ 36, ECF No. 30-2, and

26  counsel appears to be able to prosecute the case vigorously because he has experience in wage

27  and hour litigation and has devoted many hundreds of hours of work to this matter, *see id.* ¶ 19;

28  Mot. at 12–13.  Additionally, the named plaintiff's incentive award is conditioned upon final

7

1   approval of the court.  Proposed Order for Prelim. Approval ¶ 13, ECF No. 30-4.  *See In re*

2   *Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 943 (9th Cir. 2015) (leaving incentive awards

3   for final approval of the court suggests lack of conflict of interest).

4          Because the plaintiffs' claims here are likely to satisfy the four prerequisites of Rule 23(a),

5   the court turns to Rule 23(b).  The plaintiffs request certification under Rule 23(b)(3).  *See* Mot. at

6   13–14.  A Rule 23(b)(3) class may be certified only if (1) "the questions of law or fact common to

7   class members predominate over any questions affecting only individual members" and (2) "a

8   class action is superior to other available methods for fairly and efficiently adjudicating the

9   controversy."  Fed. R. Civ. P. 23(b)(3).  "The predominance inquiry asks whether the common,

10  aggregation-enabling, issues in the case are more prevalent or important than the non-common,

11  aggregation-defeating, individual issues."  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454

12  (2016) (citation and internal quotation marks omitted).  "The superiority inquiry . . . requires

13  determination of whether the objectives of the particular class action procedure will be achieved

14  in the particular case[,]" which "necessarily involves a comparative evaluation of alternative

15  mechanisms of dispute resolution."  *Hanlon*, 150 F.3d at 1023 (citation omitted).  Rule 23 lists

16  "non-exclusive factors" to consider when evaluating both predominance and superiority:

17          (A)   the class members' interests in individually controlling the
18                prosecution or defense of separate actions;

19          (B)   the extent and nature of any litigation concerning the
20                controversy already begun by or against class members;

21          (C)   the desirability or undesirability of concentrating the
22                litigation of the claims in the particular forum; and

23          (D)   the likely difficulties in managing a class action.

24  Fed. R. Civ. P. 23(b)(3); *Hanlon*, 150 F.3d at 1023.

25         First, wage and hour class actions are likely to be certified under the predominance

26  standard when "the major questions in [the] case arise from [the defendant's] alleged uniform

27  failure to properly calculate wages and overtime, account for meal periods and rest periods, and

28  provide reimbursements."  *Smothers*, 2019 WL 280294, at *7.  This may be true even when some

1  factual questions call for individualized evidence.  *See, e.g.*, *Pena v. Taylor Farms Pacific*,

2  305 F.R.D. 197, 216–220 (E.D. Cal. 2015), *aff'd*, 690 F. App'x 526 (2017), *cert. denied*, 138 S.

3  Ct. 976 (2018) (holding individualized determinations of damages insufficient to impede a class

4  action).  An employer's uniform policies often predominate when they apply to all of the putative

5  class and when class members did or do the same or similar work.  *See, e.g.*, *Abdullah v. U.S. Sec.*

6  *Assocs., Inc.*, 731 F.3d 952, 965–66 (9th Cir. 2013); *Smothers*, 2019 WL 280294, at *7.

7          Here, the named plaintiff alleges he and the putative class members were all hourly

8  workers and either grounds maintenance workers or similarly situated employees for the same

9  company.  Spivak Decl. ¶ 10.  Plaintiff worked during the same general time period as other class

10  members: the class includes people who were employed from April 2015 to March 2020, while

11  plaintiff worked from December 2017 to April 2018.  *See Rai v. Santa Clara Valley*

12  *Transportation Auth.,* 308 F.R.D. 245, 261 (N.D. Cal. 2015) (named plaintiffs need not work

13  during identical time periods nor for entire class period).  At this stage, this case appears to

14  involve none of the individualized factual disputes that have derailed other motions to certify

15  wage and hour classes.  *See, e.g.*, *Pena*, 305 F.R.D. at 210–11 (denying certification in part due to

16  testimonial inconsistencies and other person-to-person differences regarding off-the-clock work

17  allegedly required by defendants).  Here, plaintiff's injuries arise from not being compensated

18  during a security check required to enter the employer's facility.  FAC ¶ 31.

19          Additionally, the record does not currently suggest any other class member will have an

20  interest in controlling the litigation individually, *see* Fed. R. Civ. P. 23(b)(3)(A), because, for

21  example, it does not appear some claims are much larger or more complex than others.  The

22  information allowing the court to more closely evaluate this issue will come to light after the

23  claims administrator contacts each employee.  As the claims administrator will allocate the

24  settlement based on how many paychecks a person received, it is likely there will be a range in

25  what class members receive.  Stip. ¶ 2.6.  However, at this point the range does not appear

26  concerning due to the dollar amount of the settlement.

27          Next, the court turns to superiority and finds a class action will be superior to other

28  methods of dispute resolution.  *See Smothers*, 2019 WL 280294, at *7.  Specifically, the dollar

1    amounts at issue here—$505 at most if the settlement were to be split evenly among the 54 class

2    members[3]—are likely smaller than the costs of individual litigation.  *See, e.g.*, *Pena*, 305 F.R.D.

3    at 220 ("Rule 23(b)(3) contemplates the 'vindication of the rights of groups of people who

4    individually would be without effective strength to bring their opponents into court at all.'"

5    (quoting *Amchem*, 521 U.S. at 617); *see also Kempen v. Matheson Tri-Gas, Inc.*, No. 15-00660,

6    2016 WL 4073336, at *7 (N.D. Cal. Aug. 1, 2016) (finding estimated recovery of $50 per person

7    for one class and $500 for the other "suggest[s] that the incentive to litigate any individual claim

8    is low and that class treatment is superior").  The parties have not described and the court is not

9    aware of any other related litigation.  *See* Fed. R. Civ. P. 23(b)(3)(B).  Additionally, this District

10   encompasses Tracy, where the class members were allegedly deprived of their lawful wages.  *See*

11   Spivak Decl. ¶¶ 6, 8; Fed. R. Civ. P. 23(b)(3)(C).  Finally, any "likely difficulties in managing a

12   class action" pose no concerns here because this case will not be tried, *see Amchem*, 521 U.S. at

13   619, and ASO's employment records appear sufficient to locate class members and calculate

14   settlement payments, *see* Stip. ¶ 2.7.B.

15        In sum, in light of these considerations, the proposed class is likely to be certified at this

16   preliminary stage.

17        **B.     Likelihood of Approval Under Rule 23(e)**

18        Likely certification is only the first step to preliminary approval under Rule 23.  The

19   second is the agreement's likely compliance with Rule 23(e)(2), which requires the court to

20   decide whether the settlement is "fair, reasonable, and adequate" after considering whether:

21   22                  (A)     the class representatives and class counsel have adequately
                                 represented the class;

23                      (B)     the proposal was negotiated at arm's length;

24   25                  (C)     the relief provided for the class is adequate, taking into
                                 account:

26                              (i)     the costs, risks, and delay of trial and appeal;

---

[3] $27,267 divided by 54 class members is approximately $505 per class member.

(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Ninth Circuit decisions predating this rule lists several similar factors for district courts to consider when weighing a proposed settlement agreement:

- the strength of the plaintiffs' case;
- the risk, expense, complexity, and likely duration of further litigation;
- the risk of maintaining class action status throughout the trial;
- the amount offered in settlement;
- the extent of discovery completed and the stage of the proceedings;
- the experience and views of counsel;
- the presence of a governmental participant; and
- the reaction of the class members to the proposed settlement.

*In re Volkswagen*, 895 F.3d at 610 n.18 (quoting *Hanlon*, 150 F.3d at 1026); *see also* Fed. R. Civ. P. 23, Advisory Committee's Notes to 2018 Amendment (explaining factors listed in Rule 23(e)(2) were not intended to "displace" factors identified in existing judicial decisions).

Whether a settlement agreement has been negotiated before a class has been certified or after, the court must also undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests [and that of certain class members] to infect the negotiations.'" *Briseño v. Henderson*, No. 19-56297, 2021 U.S. App. LEXIS 16261, at *17 (9th Cir. June 1, 2021) (applying *Bluetooth* factors listed below to post-class certification settlement

11

approvals); *In re Volkswagen*, 895 F.3d at 611 (quoting *Bluetooth*, 654 F.3d at 946–47).  Three oft-cited "red flags" of unfair settlements are (1) attorneys' fees that make up a disproportionately large part of the distribution to the class, (2) "clear sailing" agreements "providing for the payment of attorneys' fees separate and apart from class funds" without defense objections and (3) agreements that permit unpaid fees to revert to defendants.  *Briseño,* 2021 U.S. App. LEXIS 16261, at *17.

Applying the factors above suggests the proposed settlement's terms are within the range of possible approval.  Counsel is experienced in wage and hour class actions.  *See e.g.,* Spivak Decl. ¶ 23. The proposed agreement treats class members similarly, with the exception of the proposed service award discussed below, and ensures that each member receives at least a small award.  *See* Stip. ¶¶ 2.5.C, 2.6.  Counsel believes the settlement is fair.  Spivak Decl. ¶ 25.  Any uncashed settlement checks will escheat to the State of California.  *Id.* ¶ 41.  And the arrangement does not contain a "clear sailing" provision.  *See Briseño,* 2021 U.S. App. LEXIS 16261, at *11 (clear sailing provision evidence of collusion between plaintiffs' counsel and defense).

Other factors, however, raise concerns.  Plaintiffs' counsel submitted a declaration with claim-by-claim estimates of the defendant's exposure.  *See* Spivak Decl. ¶ 26.  According to his estimate, a full recovery for the plaintiff class would be $333,829.47.  *See id*.  Here, the total settlement agreement is $74,500, or only 22 percent of that amount.  Stip. ¶ 2.5.A. Counsel identified a number of risks in further litigating the action that justifies the reduction of this damages amount: (1) that a court may not find ASO liable, (2) that a court may find ASO was not responsible for time spent by employees in a security-check as the security-check was conducted by Army personnel, (3) that even if ASO's actions were unlawful they were not in bad faith, which is necessary to recover some of the statutory and civil penalties the settlement provides for, and (4) ASO could attempt to narrow the size of the settlement class, among other risks.  Spivak Decl.  ¶¶ 27–30. And finally, settlement will render potentially costly, risky, and time-consuming litigation unnecessary.  Risks such as these may justify a significant discount.  *See, e.g.*, *Smothers*, 2019 WL 280294, at *12.  Here, the court will require a more searching analysis of these risks before granting final certification.

1        The attorney's declaration states that the parties engaged in "extensive negotiations at

2  arms' length and exchanged data, documents, and information."  Spivak Decl. ¶ 25.  Counsel

3  conducted fact investigation, reviewed informal disclosures between the parties, and deposed the

4  plaintiff.  *Id.*  However, the parties do not appear to have attended any formal mediation sessions,

5  and they do not describe the extent of their negotiations.  *Cf., e.g.*, *Villegas v. J.P. Morgan Chase*

6  *& Co.*, No. 09-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (settlement reached

7  after negotiation suggests settlement is non-collusive).  For final approval, the court will require

8  more information regarding the types of discovery completed and how the negotiations came to

9  occur.

10        Under the scrutiny the court engages in here, the parties' proposals raise red flags.  *See*

11  *Bluetooth*, 654 F.3d at 947.  First, counsel requests one-third of the gross settlement award.

12  Spivak Decl. ¶ 33.   The benchmark for attorney's fees in the Ninth Circuit is 25 percent.  *See In*

13  *re Easysaver Rewards Litig.*, 906 F. 3d 747, 754 (9th Cir. 2018).  Courts in this district have

14  approved fees at 33 percent of the settlement fund for matters involving state law claims.  *See*

15  *Rodriguez v. Penske Logistics, LLC*, No. 14-2061, 2019 WL 246652, at *12 (E.D. Cal. Jan. 17,

16  2019) (approving attorney's fees representing 31.2% of common fund); *Vasquez v. Coast Valley*

17  *Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (approving attorney's fees in amount of

18  33.3% of common fund in settlement of wage-and-hour putative class action).  But departures

19  from that benchmark are possible only if properly supported and justified.  Counsel's primary

20  support for the size of the fee is a list of prior wage and hour classes in which other courts

21  approved these attorneys' fees.  *See* Spivak Decl. ¶ 33.  Counsel provides no detail on the hours

22  attorneys or paralegals spent on the case nor an hour-by-hour or task-by-task breakdown.  It

23  appears plaintiff's counsel is aware of this deficiency, as the motion for preliminary approval

24  states counsel will file a "separate and more detailed motion for an award of attorneys' fees and

25  costs before the deadline for the class members to make objections."  Mot. at 12.  Without more

26  information, the court cannot at this point signal that the proposed fee is reasonable nor that

27  counsel's hours and rates could serve as a useful cross-check for the 33 percent fee award.  The

28  court will require greater support before final approval can be granted.

The proposed incentive awards are also cause for concern. As described above, the settlement provides the named plaintiff $5,000 as an incentive award. Spivak Decl. ¶ 36. This amount is ten times an average settlement award and comprises close to 6.7 percent of the $74,5000 gross settlement,[4] a significant amount. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947–8 (discussing 6 percent as number that should give court pause when analyzing appropriateness of incentive award). Such a large incentive award sets the named plaintiff apart from the absent class members; a plaintiff who stands to receive several thousand dollars extra has an incentive to support agreements that are unfair to absent class members. *See Radcliffe*, 715 F.3d at 1167 (reversing $5,000 incentive award conditioned on plaintiff's support of settlement). For that reason, although the Ninth Circuit has agreed that incentive awards "may be proper," it has "cautioned that awarding them should not become routine practice." *Id.* at 1164. "[I]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Id.* at 1163 (quoting *Staton*, 327 F.3d at 975). The Circuit has regularly reversed excessive awards. *See id.* at 1163–65 (citing *Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012), *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009), and *Staton*, 327 F.3d 938 (reversing awards of up to $50,000 to named plaintiffs)). In support of the incentive award, counsel represents that the named plaintiff worked with class counsel, provided "factual information and documentation" necessary to the action, submitted a deposition, responded to written discovery, and faced a risk of having to pay defendant's legal fees. Stip. ¶ 2.5.C; Spivak Decl. ¶ 36. This is helpful, but not enough for the court to say it will bless the incentive award at the time of final approval. The court will require greater support at that time to be persuaded.

The court recognizes that any of the above fees, costs and incentive payments not approved will be returned to the State of California. Stip. ¶ 2.7.D. This proviso, along with the absence of any other indication counsel or the named plaintiff has shirked their responsibilities to

---

[4] 5,000 divided by 74,500 equals .06711409395; the court rounded down to get 6.7 percent.

1    the absent class members, mitigates the negative implications of the fee and incentive award

2    proposals. *See, e.g.*, *Greer v. Dick's Sporting Goods, Inc.*, No. 15-01063, 2019 WL 4034478, at

3    *5–7 (E.D. Cal. Aug. 27, 2019).  Still, the court defers a decision on the proposed fee and

4    incentive awards. *Id.* at *7.

5          The court is mindful of the "strong judicial policy favor[ing] settlement of class actions."

6    *Adoma*, 913 F. Supp. 2d at 972 (citing *Class Plaintiffs*, 955 F.2d at 1276).  For that reason, the

7    court concludes at this point the substance of the agreement is likely to be approved under Rule

8    23(e)(2) if the concerns expressed above can be resolved at the final approval stage.  At a

9    minimum, the court will require a more searching analysis of (1) the risks of further litigation,

10    (2) support and justification for attorneys' fees greater than the 25 percent benchmark, including

11    sufficient information to perform a lodestar cross-check, and (3) greater support for the requested

12    incentive award to the named class member in final approval.  To be clear, the court does not

13    need the parties to address these issues until they seek final approval.

14    **C.**     **Notice**

15          For any class certified under Rule 23(b)(3), "the court must direct to class members the

16    best notice that is practicable under the circumstances, including individual notice to all members

17    who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Under Rule 23,

18          The notice must clearly and concisely state in plain, easily
19          understood language: (i) the nature of the action; (ii) the definition
20          of the class certified; (iii) the class claims, issues, or defenses; (iv)
21          that a class member may enter an appearance through an attorney if
22          the member so desires; (v) that the court will exclude from the class
23          any member who requests exclusion; (vi) the time and manner for
24          requesting exclusion; and (vii) the binding effect of a class
25          judgment on members under Rule 23(c)(3).

26    Fed. R. Civ. P. 23(c)(2)(B); *see also Smothers*, 2019 WL 3080822, at *2.

27          As noted above, the parties appear to have reached consensus on a form of notice of the

28    proposed settlement to class members.  *See* Mot. at 6.  However, the parties appear to have

1    attached only the LWDA letter as the notice.  *See* LWDA Letter Ex. A, ECF No. 30-2.[5]  This is

2    insufficient given the requirements of Rule 23(c)(2)(B).  In order to conclude the proposed notice

3    satisfies the requirements of Rule 23(c)(2)(B) and 29 U.S.C. § 216(b), the court needs to view the

4    notice itself.

5           The court will allow class counsel to supplement the record on the pending motion with a

6    copy of the notice and up to five pages of briefing explaining why the notice satisfies the

7    applicable law.

8    **IV.    CONCLUSION**

9           The motion for preliminary approval is TENTATIVELY GRANTED, subject to the

10   parties' filing within fourteen days an acceptable form of notice to class members as discussed

11   above.

12          The court DISMISSES the Doe defendants.

13          IT IS SO ORDERED.

14   DATED:   August 12, 2021.

15

16                                          _____
                                            CHIEF UNITED STATES DISTRICT JUDGE

---

[5] The ECF docket number is obscured at the top of the page, so this is the court's best guess as to the number.  Alternately, the letter begins on page 144 of the PDF packet of the document. The same document was also filed as Exhibit 2, ECF No. 30-2.