1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DEVIER AVERY,                              No.  2:19-cv-00924-DAD-AC

12                  Plaintiff,

13        v.                                    ORDER GRANTING MOTIONS FOR FINAL
                                                APPROVAL OF CLASS ACTION
14   AKIMA SUPPORT OPERATIONS, LLC,             SETTLEMENT AND GRANTING MOTION
     an Alaska Limited Liability Company,       FOR ATTORNEY FEES, COSTS, AND
15                                              INCENTIVE AWARD
                  Defendant.
16                                              (Doc. Nos. 36, 41)

17

18

19         This matter came before the court on September 20, 2022 for a hearing on plaintiff Devier

20   Avery's unopposed motions for final approval of a class action settlement and for an award of

21   attorneys' fees, costs, and an incentive award for plaintiff.  (Doc. Nos. 36, 40, 41, 42.)  Attorney

22   David Spivak of the Spivak Law Firm appeared by video on behalf of plaintiff and the putative

23   class.  Attorney Heather Hearne of the Kullman Firm appeared by video on behalf of defendant

24   Akima Support Operations, LLC.  For the reasons set forth below, the court will grant final

25   approval of the class action settlement and will grant the motion for attorneys' fees, costs, and an

26   incentive award to plaintiff Avery.

27   /////

28   /////

                                                   1

**BACKGROUND**

The court previously summarized plaintiff's allegations in its August 13, 2021 order tentatively granting plaintiff's motion for preliminary approval of a class action settlement and conditional class certification.[1]  (Doc. No. 32.)  The court will not repeat that factual background in this order.  Following the grant of preliminary approval in this action, on April 26, 2022, plaintiff filed the pending unopposed motion for attorneys' fees, costs, and an incentive award for plaintiff, and on August 12, 2022, plaintiff filed the pending unopposed motion for final approval of the parties' class action settlement.  (Doc. Nos. 36, 41.)  On August 25, 2022, this case was reassigned from Chief Judge Kimberly J. Mueller to the undersigned.  (Doc. No. 44.)  As of the date of the hearing on September 20, 2022, no objections to the settlement had been received nor filed with the court, and one class member has opted out of the settlement.  (*See* Doc. No. 41 at 2.)

As summarized by the court in its order tentatively granting preliminary approval of the parties' settlement, the settlement agreement provides for a settlement payment made by defendant in the amount of $74,500.00 (the "gross settlement fund").  (Doc. No. 32 at 2.)  Assuming the parties' proposed allocations are awarded in full, approximately $27,167.00 (the "net settlement amount") will be available for distribution to participating class members.  (*Id.* at 3.)

**FINAL CERTIFICATION OF SETTLEMENT CLASS**

The court conducted an examination of the class action factors in the orders granting preliminary approval of the settlement and found certification to be warranted.  (*See* Doc. Nos. 32 at 10; 35 at 2.)  Because no additional substantive issues concerning the certification have been

/////

---

[1]  On August 13, 2021, the court tentatively granted plaintiff's motion for preliminary approval, "subject to the parties' filing within fourteen days an acceptable form of notice to class members" as described in that order.  (Doc. No. 32 at 16.)  On August 26, 2021, plaintiff filed a supplemental brief in support of plaintiff's motion for preliminary approval, which contained a copy of the proposed class notice.  (Doc. No. 33.)  Finding that the proposed notice meets the requirements of Federal Rule of Civil Procedure 23, the court granted plaintiff's motion for preliminary approval on March 7, 2022.  (Doc. No. 35 at 2.)

1   raised, the court does not repeat its prior analysis here and finds that final class action certification

2   in this case is appropriate.

3        The following class of an estimated 57[2] individuals is therefore certified for settlement

4   purposes:  "[a]ll hourly, non-exempt employees of Defendant Akima Support Operations, LLC

5   who performed work for Defendant at the Tracy Defense Distribution Depot located in Tracy,

6   California any time between April 3, 2015 and March 1, 2020."  (Doc. No. 41-1 at 17; *see also*

7   Doc. No. 32 at 2.)  In addition, for the reasons the court determined that the adequacy of

8   representation requirement was satisfied in its order granting tentative preliminary approval (*see*

9   Doc. No. 32 at 7–8), plaintiff Avery is appointed as class representative and attorneys David

10  Spivak of the Spivak Law Firm and Walter Haines of United Employees Law Group are

11  appointed as class counsel.

12       The parties have agreed to retain Simpluris, Inc. ("Simpluris") to handle the notice and

13  claims administration process and request that Simpluris be appointed to serve as the settlement

14  administrator.  (Doc. No. 41-1 at 21.)

15       The estimated cost of administering this settlement is $4000.00, and the parties have

16  specified that administrative expenses shall not exceed $7,500.[3]  (*See* Doc. Nos. 41-2 at 3; 41-1 at

17  21.)  The cost of administering the settlement will be deducted from the gross settlement fund.

18  (Doc. No. 41-1 at 21.)  Class counsel assert that before agreeing to use Simpluris as Settlement

19  _____

20  [2]  In class counsel's declaration in support of plaintiff's motion for preliminary approval,
    Attorney Spivak represented that the proposed class contains 54 members.  (Doc. No. 30-2 at 4.)

21  However, plaintiff specifies in his final approval motion that the proposed class contains 57
    members.  (Doc. No. 41 at 8–9.)  At the final approval hearing, class counsel explained that the

22  class size provided at the preliminary approval stage was an estimate, and following preliminary
    approval of the proposed settlement, the parties were able to confirm the class size of 57

23  members.

24  [3]  In his motion for attorneys' fees, costs, and expenses, plaintiff requests administrative costs in
    the amount of $4,831.68 to be allocated to Simpluris.  (Doc. No. 36-1 at 22–23.)  However,

25  Christina Fowler, a case manager at Simpluris, states in her third supplemental declaration
    Simpluris's total administration costs in connection with the proposed settlement in this action are

26  $4,000.00.  (Doc. No. 41-2 at 3.)  At the final approval hearing, class counsel clarified that the

27  amount they seek in administration costs in connection with the proposed settlement is $4,000.00.
    Class counsel further clarified at the final approval hearing that funds leftover from the $7,500.00

28  originally allocated toward settlement administrator costs would be distributed to class members.

1    Administrator, the parties also reviewed bids from Class Action Claims Administration, Inc., CPT

2    Group, Inc., ILYM Group, Inc., which submitted bids of $4,750.00, $9,000.00, and $4,911.80,

3    respectively.  (Doc. No. 30-2 at 21.)  Upon reviewing the bids from these third-party

4    administrators, the court finds the administrative costs allocated here under the proposed

5    settlement are fair and reasonable.  Accordingly, Simpluris is appointed as the settlement

6    administrator.

7                            **FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

8           Class actions require the approval of the district court prior to settlement.  Fed. R. Civ.

9    P. 23(e).  To approve a settlement, a district court must:  (i) ensure notice is sent to all class

10   members; (ii) hold a hearing and make a finding that the settlement is fair, reasonable, and

11   adequate; (iii) confirm that the parties seeking approval file a statement identifying the settlement

12   agreement; and (iv) be shown that class members were given an opportunity to object.  Fed. R.

13   Civ. P. 23(e)(1)–(5).  The settlement agreement in this action was previously filed on the court's

14   docket (*see* Doc. No. 30-2 at 24–57), and class members have been given an opportunity to

15   object.  The court now turns to the adequacy of notice and its review of the settlement following

16   the final fairness hearing.

17   **A.     Notice**

18          Adequate notice of the class settlement must be provided under Rule 23(e).  *Hanlon v.*

19   *Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998); *see also Silber v. Mabon*, 18 F.3d 1449,

20   1453–54 (9th Cir. 1994) (noting that the court need not ensure all class members receive actual

21   notice, only that "best practicable notice" is given); *Winans v. Emeritus Corp.*, No. 4:13-cv-

22   03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that

23   'reasonable effort' be made to reach all class members, it does not require that each individual

24   actually receive notice.").  "Notice is satisfactory if it 'generally describes the terms of the

25   settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

26   forward and be heard.'"  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)

27   (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).  Any notice

28   of the settlement sent to the class should alert class members of "the opportunity to opt-out and

                                                            4

1  individually pursue any state law remedies that might provide a better opportunity for recovery."

2  *Hanlon*, 150 F.3d at 1025.

3      The court previously reviewed the notice provided in this case at the preliminary approval

4  stage and found it to be satisfactory.  (Doc. No. 35 at 2.)  Following the grant of preliminary

5  approval, the settlement administrator Simpluris conducted a National Change of Address search

6  to update the list of proposed class members with current addresses and then mailed the court-

7  approved notice to the 57 proposed class members.  (Doc. No. 41 at 8–9.)  Of the 57 initial

8  mailings, zero were returned as undeliverable.  (*Id.* at 9.)  Thus, of the 57 total class members, all

9  are estimated to have received actual notice of the settlement.

10     Given the above, the court accepts the reports of the settlement administrator and finds

11  adequate notice has been provided, thereby satisfying Federal Rule of Civil Procedure 23(e)(1).

12  *Silber*, 18 F.3d at 1453–54; *Winans*, 2016 WL 107574, at *3.

13  **B.    Final Fairness Determination**

14     On September 20, 2022, the court held a final fairness hearing, at which class counsel and

15  defense counsel appeared by video.  The court now must determine whether the settlement is fair,

16  adequate, and reasonable.  *See* Fed. R. Civ. P. 23(e)(2).

17     At the final approval stage, the primary inquiry is whether the proposed settlement is

18  fundamentally "fair, adequate, and reasonable."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th

19  Cir. 2012) (quoting Fed. R. Civ. P. 23(e)); *Hanlon*, 150 F.3d at 1026.  "It is the settlement taken

20  as a whole, rather than the individual component parts, that must be examined for overall

21  fairness."  *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.*,

22  688 F.2d 615, 628 (9th Cir. 1982)); *see also Lane*, 696 F.3d at 818–19.  Having already

23  completed a preliminary examination of the agreement, the court reviews it again, mindful that

24  the law favors the compromise and settlement of class action suits.  *See, e.g.*, *In re Syncor ERISA*

25  *Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Vill.*, 361 F.3d at 576; *Class Plaintiffs v.*

26  *City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625.

27  Ultimately, "the decision to approve or reject a settlement is committed to the sound

28  discretion of the trial judge because he [or she] is exposed to the litigants, and their strategies,

positions and proof." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1026).

In assessing the fairness of a class action settlement, courts balance the following factors:[4]

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir. 2009). These settlement factors are non-exclusive, and each need not be discussed if they are irrelevant to a particular case. *Churchill Vill.*, 361 F.3d at 576 n.7.

---

[4]  As part of the 2018 amendments to the Federal Rules of Civil Procedure, subsection (e)(2) was added to Rule 23, providing guidance to district courts in determining whether a class action settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In so determining, the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. Pro. 23(e)(2). The purpose of the 2018 amendment was "not to displace any factor" previously generated by courts, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the propos[ed settlement]." Fed. R. Civ. P. 23, Advisory Comm. Notes; *see Kang v. Wells Fargo Bank, N.A.*, No. 5:17-cv-06220-BLF, 2021 WL 5826230, at *14 (N.D. Cal. Dec. 8, 2021) ("Consideration of *Churchill* factors is not precluded by the 2018 amendment to Rule 23."); *Stoddart v. Express Servs.*, No. 2:12-cv-01054-KJM-CKD, 2021 WL 5761083, at *2 (E.D. Cal. Dec. 3, 2021) ("Before these provisions were incorporated into Rule 23(e), the Ninth Circuit and other courts used similar factors to decide whether settlement agreements in class actions were 'fair, reasonable, and adequate.'").

However, the Ninth Circuit has found that consideration of the *Churchill* factors alone is not sufficient to survive appellate review.  *See Briseño v. Henderson*, 998 F.3d 1014, 1022–26 (9th Cir. 2021) (holding that the revised Rule 23(e) requires district courts "to go beyond our precedent" and mandates consideration of "the *Bluetooth* factors" to all class action settlements, regardless of whether settlement was achieved before or after class certification; *see also* Fed. R. Civ. P. 23(e)(2)(C)–(D).  Under the revised Rule 23(e), "district courts must apply the *Bluetooth* factors to scrutinize fee arrangements . . . to determine if collusion may have led to class members being shortchanged." *Briseño*, 998 F.3d at 1026.  The so-called *Bluetooth* factors—also referred to as "subtle signs" of collusion—include:  (i) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (ii) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," or a provision under which defendant agrees not to object to the attorneys' fees sought; and (iii) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotations and citations omitted).  "The presence of these three signs is not a death knell—but when they exist, 'they require[ ] the district court to examine them, . . . develop the record to support its final approval decision,' and thereby 'assure itself that the fees awarded in the agreement were not unreasonably high.'" *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015)).  Thus, while this court has wide latitude in determining whether a settlement is substantively fair, it is held to a higher procedural standard, and in order "[t]o survive appellate review . . . [it] must show it has explored comprehensively all factors, and must give a reasoned response to all non-frivolous objections." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 606 (9th Cir. 2021) (quoting *Allen*, 787 F.3d at 1223–24).

1.     Strength of Plaintiffs' Case

When assessing the strength of a plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of th[e]

7

litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989).  The court cannot reach such a conclusion because evidence has not been fully presented. *Id*.  Instead, the court "evaluate[s] objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id*.

Plaintiff asserts that in continuing to litigate this action, he would have faced many challenges, despite his confidence in his case.  Plaintiff contends that during the class period, defendant engaged in a "uniform policy of failing to properly account for all time worked and failing to compensate for all hours worked, fail[ing] to provide accurate written wage statements, fail[ing] to pay waiting time penalties, and violating unfair competition laws."  (*See* Doc. No. 30-2 at 4–5.)  However, as described in the parties' settlement agreement, defendant "denies each and all of the claims alleged" by plaintiff in this action and "also denies that the asserted claims are appropriate for class treatment under [Rule 23], except pursuant to settlement . . . ."  (Doc. No. 41-1 at 11–12.)  According to plaintiff, defendant's "defenses to certification made prosecution of the lawsuit and certification potentially problematic."  (Doc. No. 41 at 4.)  In addition, as described in the court's order granting preliminary approval of the proposed settlement, class counsel concede that many of plaintiff's claims may be difficult to prove.  (*See* Doc. Nos. 30-2 at 13; 32 at 12.)  For example, class counsel point to the "great difficulties involved in proving that wage and hour violations are knowing, intentional, or willful" and the "difficulties that arise from gathering employee testimony [which] create a risk to proving class wide violations."  (*See* Doc. Nos. 30-2 at 13–14.)

Accordingly, the court finds that consideration of this factor weighs somewhat in favor of granting final approval of the parties' settlement in this action.

      2.     <u>Risk, Expense, Complexity, and Likely Duration of Further Litigation</u>

When considering whether the relief for the class is "adequate," the court must take into account "the costs, risks, and delay of trial and appeal."  Fed. R. Civ. P. 23(e)(2)(C)(i).  "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d at 1101 (citing *Class Plaintiffs*, 955

F.2d at 1276).  As a result, "[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain results."  *Johnson v. Shaffer*, No. 2:12-cv-1059-KJM-AC, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco, Inc.*, No. 1:09-cv-00704-AWI-JLT, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)).

Because of the aforementioned challenges, plaintiff believes the proposed settlement "avoids the risk of non-recovery and the additional accompanying expense associated with an appeal if the class were not certified."  (Doc. No. 41 at 4.)  For instance, in light of the difficulties described above with regard to proving that the alleged violations in this action were intentional and class-wide, class counsel maintain that "the many significant risks [of] continued litigation" would "likely lead to expensive and protracted litigation, both at the trial and appellate levels, absent the Settlement."  (Doc. No. 41-1 at 6; *see also* Doc. No. 30-2 at 12–14.)  Because this information suggests that there would be risk and expense in seeking to prove plaintiff's case at trial, this factor also weighs in favor of granting final approval.

### 3.     Risk of Maintaining Class Action Status Throughout Trial

Plaintiff represents that "[a]bsent settlement, there was a risk that there would not be a certified class at the time of trial."  (Doc. No. 41 at 4.)  According to plaintiff, defendant planned to challenge the predominance, typicality, and commonality prongs of Rule 23(a) and (b).  (*Id.* at 4–5.)  Although plaintiff does not elaborate further on defendant's specific arguments with respect to these prongs, the court is satisfied that defendant's challenges would have presented at least some risk that plaintiff would not be able to maintain a class action through trial.  Thus, consideration of this factor also weighs in favor of granting final approval.

### 4.     Amount Offered in Settlement

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968); *see also* Fed. R. Civ. P 23(e)(2)(C)–(D).  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  To determine whether a settlement "falls

1   within the range of possible approval" a court must focus on "substantive fairness and adequacy,"

2   and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In*

3   *re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (quoting *Schwartz v.*

4   *Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)).   In

5   addition, the court must consider whether "the proposal treats class members equitably relative to

6   each other" and whether "the relief provided for the class is adequate."  Fed. R. Civ. P.

7   23(e)(2)(C)–(D).

8          Here, the parties have agreed to a $74,500.00 gross settlement, allocated as follows:  (1)

9   up to $24,833.00 for attorneys' fees and up to $5,000.00 for class counsel's documented litigation

10  costs; (2) a $5,000.00 incentive award for plaintiff; (3) $5,000 in civil penalties under the Private

11  Attorneys General Act, California Labor Code § 2698, *et seq.* ("PAGA"), with $3,750 of the

12  penalties payable to the California Labor and Workforce Development Agency ("LWDA") [5]; (4)

13  up to $7,500.00 for settlement administration costs; and (5) the remainder of the funds being

14  allocated to the net settlement fund.  (Doc. No. 41 at 18–22.)  Defendant is responsible for paying

15  any applicable payroll taxes "separately . . . in addition to the [$74,500.00] Settlement Amount."

16  (*Id.* at 22–23.)  Class counsel estimate that the maximum potential damages plaintiff could

17  recover in this action totals $333,829.47, making the gross settlement fund an approximately

18  22.3% recovery of plaintiff's maximum potential damages.  (Doc. No. 30-2 at 12.)  However,

19  class counsel assert that the settlement amount has been discounted due to the various risks of

20  ongoing litigation.  (*See id.* at 12–14.)

21          The net settlement fund will be distributed to participating class members on a pro rata

22  basis that is based on the number of paychecks the individual received during the class period.

23  (Doc. No. 41-1 at 22.)  Based on plaintiff's current estimate of the net settlement fund, the

24  average individual class members are expected to recover $569.95, with the lowest gross

25  settlement payment estimated to be $33.27 and the highest gross settlement payment estimated to

26

27  [5]  Pursuant to the PAGA, 75% of the civil PAGA penalties, or $3,700, will go to the LWDA, and
    25%, or $1,250, will be allocated to the net settlement fund.  (Doc. No. 45-1 at 21–22); *see* Cal.
28  Lab. Code § 2699(i).

1    be $820.66.  (Doc. No. 41 at 9.)  None of the settlement fund will revert to defendant because

2    checks that are not cashed before their expiration will escheat to the State of California.  (Doc.

3    No. 41-1 at 24.)  Plaintiff asserts that the amount offered in settlement is fair, reasonable, and

4    adequate.  (Doc. No. 41 at 5.)

5           The proposed settlement amount is, for the most part, within the general range of

6    percentage recoveries that California courts—including this one—have found to be reasonable.

7    *See, e.g.*, *Singh v. Roadrunner Intermodal Servs, LLC*, No. 1:15-cv-01497-DAD-BAM, 2018 WL

8    2412325, at *7 (E.D. Cal. May 29, 2018), *modified,* 2018 WL 4382202 (E.D. Cal. Sept. 13, 2018)

9    (approving a settlement of about 12% of the estimated maximum damages); *Glass v. UBS Fin.*

10   *Servs., Inc.*, No. 3:06-cv-04068-MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007)

11   (approving a settlement of about 25–35% of the estimated maximum); *Hunt v. VEP Healthcare,*

12   *Inc.*, No. 16-cv-04790-VC, 2017 WL 3608297, at *1 (N.D. Cal. Aug. 22, 2017) (denying

13   preliminary approval of a class action settlement where the proposed settlement amounted to only

14   4.3% of the estimated damages).  As noted above, the court has received no objections to the

15   settlement, and only one class member has sought to opt out of the settlement.  Overall, based on

16   the information presented to the court, the court concludes that the amount offered in settlement

17   of this action does not appear to be unreasonable.

18                    a.    *PAGA Penalties Amount Offered in Settlement*

19          As described above, the settlement also provides for $5,000 in civil PAGA penalties.

20   (Doc. No. 41-1 at 21.)  Under PAGA, 75% of the civil penalties, or $3,750.00, will go to the

21   LWDA, and 25%, or $1,250.00, will be included in the net settlement amount.  (*Id.* at 21–22); *see*

22   Cal. Lab. Code § 2699(i).

23          Although there is no binding authority setting forth the proper standard of review for

24   PAGA settlements, California district courts "have applied a Rule 23-like standard, asking

25   whether the settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in

26   light of PAGA's policies and purposes.'"  *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp.

27   3d 959, 972 (N.D. Cal. 2019).  This standard is derived from the LWDA.  In commenting on a

28   /////

1  proposed settlement including both class action and PAGA claims, the LWDA has offered the

2  following guidance:[6]

> It is thus important that when a PAGA claim is settled, the relief
> provided for under the PAGA be genuine and meaningful, consistent
> with the underlying purpose of the statute to benefit the public and,
> in the context of a class action, the court evaluate whether the
> settlement meets the standards of being "fundamentally fair,
> reasonable, and adequate" with reference to the public policies
> underlying the PAGA.

7  *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing the LWDA's

8  guidance with approval).  Recognizing the distinct issues presented by class actions, this court is

9  persuaded by the LWDA's reasoning in *O'Connor* and therefore adopts its proposed standard in

10  evaluating the PAGA portion of the settlement now before the court.  *See, e.g.*, *Castro v. Paragon*

11  *Indus., Inc.*, No. 1:19-cv-00755-DAD-SKO, 2020 WL 1984240, at *6 (E.D. Cal. Apr. 27, 2020);

12  *Patel v. Nike Retail Servs., Inc.*, No. 3:14-cv-04781-RS, 2019 WL 2029061, at *2 (N.D. Cal. May

13  8, 2019).

14        The proposed $5,000.00 penalty payment in this case represents 6.7% of the estimated

15  $74,500.00 gross settlement amount.  (*See* Doc. No. 41-1 at 18.)  The amount proposed to settle

16  plaintiff's PAGA claims is consistent with other PAGA settlements approved by this court.  *See,*

17  *e.g.*, *Castro*, 2020 WL 1984240, at *15 (approving PAGA penalties representing 2% of the gross

18  settlement fund); *Syed v. M-I, LLC*, No. 1:12-cv-01718-DAD-MJS, 2017 WL 714367, at *13

19  (E.D. Cal. Feb. 22, 2017) (approving PAGA penalties representing 1.4% of the gross settlement

20  fund); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-cv-0324-AWI-SKO, 2012 WL 5364575, at *7

21  (E.D. Cal. Oct. 31, 2012) (approving PAGA penalties representing 0.27% of the gross settlement

22  fund).  Moreover, class counsel has declared that the proposed settlement was submitted to the

23  LWDA in accordance with PAGA, Cal. Lab. Code § 2699(l)(2), and attached supporting

24  documentation for this submission.  (Doc. No. 41-1 at 5, 43–45.)  At the final approval hearing,

25  class counsel confirmed that the LWDA did not provide any response to their submission.

26  ─────────────

27  [6]  The LWDA has also stated that it "is not aware of any existing case law establishing a specific
benchmark for PAGA settlements, either on their own terms or in relation to the recovery on
other claims in the action."  *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC (N.D. Cal.

28  Jul. 29, 2016) (Doc. No. 736 at 2–3).

1    Having reviewed the parties' submission and the terms of the proposed settlement, the court finds

2    that the settlement amount related to Plaintiff's PAGA claims is fair, reasonable, and adequate in

3    light of PAGA's public policy goals.

4         Thus, the court finds that the amount offered in settlement of the PAGA claims here

5    weighs in favor of final approval of the settlement.

6         5.    Extent of Discovery Completed and Stage of the Proceedings

7         "In the context of class action settlements, 'formal discovery is not a necessary ticket to

8    the bargaining table' where the parties have sufficient information to make an informed decision

9    about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)

10   (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).  Approval of a class

11   action settlement thus "is proper as long as discovery allowed the parties to form a clear view of

12   the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D.

13   443, 454 (E.D. Cal. 2013).  A settlement is presumed fair if it "follow[s] sufficient discovery and

14   genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D.

15   Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528).  The court must consider

16   whether the process by which the parties arrived at their settlement is truly the product of arm's

17   length bargaining, rather than collusion or fraud.  *Millan v. Cascade Water Servs., Inc.*, 310

18   F.R.D. 593, 613 (E.D. Cal. 2015).  These concerns are also reflected in Rule 23(e)(2)'s focus on

19   procedural fairness—whether "the class representatives and class counsel have adequately

20   represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P.

21   23(e)(2)(A)–(B).

22        As detailed in the court's order granting preliminary approval, the parties did not attend

23   any formal mediation sessions.  (*See* Doc. No. 32 at 13.)  Instead, plaintiff asserts that the parties

24   "have engaged in extensive negotiations and exchanged data, documents, and information" and

25   that class counsel has "conducted extensive investigation into the facts of the class action and the

26   class members' claims, including informal disclosures between the Parties and other

27   investigations."  (Doc. No. 30-1 at 9; *see also* Doc. No. 41-1 at 11.)  Plaintiff also avers that

28   defendant has "produced a significant volume of documents in this case, including all relevant

13

policies as well as detailed time and payroll records." (Doc. No. 30-1 at 8.)   In addition to the exchange of information between the parties, plaintiff asserts that class counsel engaged in "focused and thorough discovery," including locating and interviewing witnesses and absent class members, consulting with industry experts, communicating with absent class members, preparing a damages model based upon information gathered, and reviewing and analyzing documents produced by defendants and nonparties. (Doc. No. 41 at 5.)

At the final approval hearing, the parties further clarified they chose not to enter into mediation for economic and efficiency-based reasons.  According to class counsel, the parties vigorously disagreed about the merits of plaintiff's case; however, due to the relatively small size of the $75,000 gross settlement fund, the costs of mediation, and the time delay caused by mediation, the parties agreed that foregoing formal mediation would result in a larger and more expeditious settlement for class members.  Attorney Spivak also represented that even if the parties had undergone mediation before a professional mediator, he believes the parties would still have reached the same settlement.  Counsel for defendant added that due to the volume of discovery in this action, the parties were well-informed when entering into the proposed settlement agreement.  Thus, although the negotiations between the parties were not before a neutral, professional mediator, the court is satisfied that the parties' discovery in this action and subsequent negotiations constituted genuine and informed arm's length bargaining.

Accordingly, the court concludes that consideration of this factor weighs in favor of granting final approval.

6.      Experience and Views of Counsel

Class counsel have submitted declarations by attorneys Spivak and Haines describing their experience in class and representative action litigation. (*See* Doc. Nos. 36-2 at 1–10; 36-3 at 2–4.)  Attorney Spivak submits that he has been practicing law since 1995, when he graduated from Southwestern University School of Law. (Doc. No. 36-2 at 3.)  Attorney Spivak represents that he has worked "almost exclusively in the area of employment law representing employees with claims of wrongful termination, harassment, whistleblower retaliation, discrimination, wage and hour, and family and medical leave violations." (*Id.* at 4.)  In addition, he states that he has been

14

involved in "numerous wage and hour class actions at various stages of litigation" and has served as the lead attorney for plaintiffs in several wage and hour class actions.  (*Id.* at 6.)  Attorney Spivak has provided a sample list of such cases he has worked on during his career.  (*See id.* at 6–9.)  Similarly, Attorney Haines submits that he has been practicing law for over 40 years, is "highly experienced in actions of this nature," and is the most senior attorney at his firm.  (Doc. No. 36-3 at 2.)  He founded his law firm, United Employees Law Group, in 2005 to "primarily" represent employees in wage and hour claims.  (*Id.*)  According to Attorney Haines, he has represented "over 1,500 clients in wage and hour disputes of which more than 300 cases were class actions."  (*Id.*)

The court finds that the view of class counsel that the proposed settlement is fair and reasonable weighs in favor of granting final approval.

### 7.   Presence of a Governmental Participant

The settlement agreement contemplates payment of $3,750 of the settlement amount to the LWDA under PAGA.  (Doc. No. 41-1 at 21–22.)  This too weighs in favor of approval of the settlement.  *See Adoma*, 913 F. Supp. 2d at 977 (factoring civil PAGA penalties in favor of settlement approval); *Zamora v. Ryder Integrated Logistics, Inc.*, No. 3:13-cv-02679-CAB-BGS, 2014 WL 9872803, at *10 (S.D. Cal. Dec. 23, 2014) (same).

### 8.   Reaction of the Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 (citing cases).  The presumption that a settlement is fair, reasonable, and adequate is particularly strong when there is an absence of a single objection to a proposed class action settlement.  *See id.*; *Barcia v. Contain-A-Way, Inc.*, No. 3:07-cv-00938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009).  Nevertheless, "[a] court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."  *Cruz v. Sky Chefs, Inc.*, No. 4:12-cv-02705-DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) (citing *Churchill Vill.,* 361 F.3d at 577).

1    According to plaintiff, no member of the class has filed an objection to the settlement

2  pending before the court for final approval.  (Doc. No. 41 at 3.)  Moreover, no class members

3  raised any objections to the settlement at the final fairness hearing.  Accordingly, consideration of

4  this factor weighs significantly in favor of granting final approval.

5           9.      Subtle Signs of Collusion

6    The court now turns to a review of whether any of the "more subtle signs" of collusion

7  recognized by the Ninth Circuit are present here.  *See Bluetooth*, 654 F.3d at 947.

8    First, the court does not find that class counsel is seeking a disproportionate distribution of

9  the settlement.  With an average estimated class member recovery in this action of $569.95 and a

10  requested award of attorneys' fees in the amount of $24,833.00, it does not appear that counsel

11  seeks to receive a disproportionate distribution of the settlement, even though the award of

12  attorneys' fees sought here—one-third of the settlement fund—is on the high end of amounts

13  typically awarded in the Ninth Circuit.  (*See* Doc. No. 41 at 9); *see, e.g.*, *Morales* , 2011 WL

14  5511767, at *12 ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to

15  33 1/3% of the total settlement value, with 25% considered the benchmark.") (quoting *Powers v.

16  Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755-

17  DAD-SKO, 2021 WL 20242333, at *5, *12 (E.D. Cal. May 21, 2021) (granting final approval of

18  a class and collective action settlement with an average individual class member recovery of

19  $1,070.62 and an award of $1,031,250.00 in attorneys' fees).

20    Second, the settlement here includes a version of a "clear sailing" arrangement, in which

21  defendant agreed not to oppose plaintiff's request for a maximum award of $24,833.00 or one-

22  third of the gross settlement amount in attorneys' fees.  (Doc. No. 41-1 at 19.)  Although the

23  "very existence of a clear sailing provision increases the likelihood that class counsel will have

24  bargained away something of value to the class," *Bluetooth*, 654 F.3d at 948 (citation omitted),

25  the existence of a clear sailing provision is not necessarily fatal to final approval.  Rather, "when

26  confronted with a clear sailing provision, the district court has a heightened duty to peer into the

27  provision and scrutinize closely the relationship between attorneys' fees and benefit to the class."

28  *Id.* (citing *Staton*, 327 F.3d at 954).  Although plaintiff does not squarely address the "clear

sailing" in his pending motion, he contends that awarding one-third of the gross settlement fund is well-supported by case law and warranted based on the recovery achieved in this case in light of the risks taken.  (*See* Doc. No. 36-1 at 12–22.)   Plaintiff argues that class counsel "achieved a laudable result in the face of a strong defense . . . [and] risky, and contested claims."  (*Id.* at 10.) The court further notes again that none of the class members have objected to this settlement, and only one class member has requested to be excluded from it.  (*See* Doc. No. 41 at 2.)

Third, the parties did not arrange for an unawarded amount of fees to revert to defendants. Rather, settlement checks that are not cashed before their expiration will be canceled with funds to be transmitted to the State of California.  (Doc. No. 41-1 at 24.)

Based upon its consideration of all of these factors, the court is satisfied that the subtle signs of collusion that the Ninth Circuit has warned of are not sufficiently present here to warrant the rejecting of the parties' proposed settlement.

In sum, after considering all of the relevant factors, the court finds on balance that the settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e).  Accordingly, the court will grant plaintiff's motion for final approval of the parties' class action settlement.

## ATTORNEYS' FEES, COSTS, AND INCENTIVE PAYMENTS

As noted above, plaintiff has also submitted a motion seeking awards of attorneys' fees, class counsel's litigation expenses, settlement administrator costs to Simpluris, and an incentive award for plaintiff Avery.  (Doc. No. 36.)

**A.      Attorney's Fees**

This court has an "independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941.  This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial."  *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994).  As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from
/////

the common fund. *In re Mercury*, 618 F.3d at 994; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *West Publ'g Corp.*, 563 F.3d at 968.

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. 2:14-cv-08822-SJO-EX, 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). As noted above, the Ninth Circuit has generally set a 25% benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").

Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD-Rental*, 779 F.3d at 954–55. Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.

/////

Here, the parties' settlement provides that class counsel will seek an award of one-third of the gross settlement fund, equivalent to $24,833.00. [7]  (Doc. No. 41-1 at 19.)  The requested 33.33% fee is higher than the 25% benchmark rate in the Ninth Circuit, but it is not an uncommon percentage to wage and hour class actions in the Eastern District of California.  *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (listing cases where courts approved attorneys' fees of approximately one-third of the total settlement).  In its order tentatively granting preliminary approval of the proposed settlement in this action, the court noted that it did not have enough information at that time to determine whether the proposed attorneys' fees are reasonable and that the court would require "greater support [for the proposed fee award] before final approval can be granted."  (Doc. No. 32 at 13.)  In his pending motion for attorneys' fees, plaintiff contends that a fee award of one-third of the gross settlement fund is reasonable here for several reasons.

First, plaintiff asserts that despite the Ninth Circuit's 25% benchmark, courts in the Ninth Circuit have approved awards of fees equal to one-third of the overall recovery.  (Doc. No. 36-1 at 15) (citing cases).  Plaintiff also contends that the requested attorneys' fees here amount to less than what class counsel would receive if they represented each class member on an individual basis under their standard contingency fee arrangements that authorize fees of up to 40% of the ultimate recovery.  (*Id.* at 16.)  Moreover, plaintiff argues that the contingency fee basis of class counsels' representation—including the fact that they took on the risk of not receiving any

---

[7]  The proposed settlement agreement provides that

> [t]he Parties agree that, over and above the lesser or (a) the total amount of court-approved Attorneys' Fees and Costs award in this Lawsuit; or (b) the sum of $29,833.00, each of the Parties, *including all Settlement Class Members*, shall bear their own fees and costs, including but not limited to, those relative to the investigation, filing, prosecution, or settlement of the Lawsuit . . . ."

(Doc. No. 41-1 at 19) (emphasis added).  At the final approval hearing, class counsel clarified that this provision was not intended to suggest that class members would be responsible for any attorneys' fees whatsoever in connection with class counsel's representation in this action.  In light of class counsel's clarification that class members will not be in any way responsible for additional attorneys' fees in this action, the court will proceed to review the requested $24,833.00 award of attorneys' fees.

1   payment or reimbursement for their work and expenses incurred throughout their litigation of this

2   matter—justifies the requested one-third fee because "it is an established practice to reward

3   attorneys who take on the added risk of a contingency case." (*Id.* at 16–17.)  Finally, plaintiff

4   points to class counsel's experience in litigating wage and hour class actions as supporting the

5   reasonableness of the requested award, stating that their "previous experience in similar matters

6   was integral" to the parties reaching the proposed settlement, particularly in light of "the caliber

7   and experience of opposing counsel in labor in employment litigation." (*Id.* at 19.)

8        The court is unpersuaded by plaintiff's argument that "it would be unfair to compensate

9   Class Counsel at a lesser rate" than they would have received if they had represented each class

10   member individually under their regular 40% contingency fee arrangement. (*Id.* at 16.)  Notably,

11   plaintiff acknowledged in his motion for preliminary approval that "[g]iven the very high costs of

12   litigating a wage-and-hour case, class members would have difficulty pursuing their claims

13   individually," such that "settlement is the best and only means to ensure that all class members

14   receive prompt and efficient relief." (Doc. No. 30-1 at 15.)  Given this characterization by

15   plaintiff and the court's preliminary finding that a class action is superior to individual litigation

16   of the claims in this case, it follows that the use of the class device here has been more efficient—

17   and has thus expended less of counsel's time and effort—than bringing 57 separate lawsuits on

18   behalf of the individual class members. (*See* Doc. No. 32 at 9.)  Similarly, class counsel, with

19   their extensive experience in litigating wage-and-hour class actions, presumably undertook this

20   representation with the knowledge that "[t]he typical range of acceptable attorneys' fees in the

21   Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the

22   benchmark." *Morales*, 2011 WL 5511767, at *12 (citing *Powers v. Eichen*, 229 F.3d 1249, 1256

23   (9th Cir. 2000)).  Accordingly, the court does not find that class counsel's standard 40%

24   contingency fee rate would necessarily render an award of less than 33.33% "unfair" in this case.

25        Nonetheless, the court agrees that consideration of several other factors supports the

26   finding that the requested fee award departing from the benchmark is fair and reasonable.  The

27   average individual class members' recovery of $569.95 is a positive outcome for class members

28   in this case. (*See* Doc. No. 41 at 9.)  In addition, class counsel undertook this representation on a

20

contingency fee basis, and the relatively small size of the gross settlement fund in this case results in an overall lower award for class counsel, even at the 33.33% rate. *See Williams v. Brinderson Constructors, Inc.*, No. 2:15-cv-02474-MWF-AGR, 2017 WL 490901 (C.D. Cal. Feb. 6, 2017) (finding that a 33% attorney fee award is reasonable "[g]iven the smaller recovery" of $300,000 in the settlement and noting that departures from the 25% benchmark are more common in cases with smaller settlement funds); *Moreno v. Beacon Roofing Supply, Inc.*, No. 3:19-cv-00185-GPC-LL, 2020 WL 3960481, at *8 (S.D. Cal. July 13, 2020) ("In cases where the common fund is under $10 million, fees are often above 25%.")  A departure from the benchmark is also supported by the absence of any objection to the settlement.  The class notice specifically advised class members that class counsel would seek $24,833.00 from the gross settlement fund for attorneys' fees.  (Doc. No. 36-2 at 162.)  Plaintiff's request for attorneys' fees thus appears to have the support of the class and that support weighs in favor of the requested award.

The court next turns to the lodestar calculation in order to cross-check the reasonableness of the requested attorneys' fee award.  Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'"  *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662-OWW-MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. 2:06-cv-04149-MMM-SH, 2008 WL 8150856 (C.D. Cal. July 21, 2008)).  Moreover, beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, a lodestar multiplier can be applied.  "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 Newberg on Class Actions § 14.7 (stating courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting 4 Newberg on Class Actions § 14.7).

/////

1    Here, class counsel assert that the total lodestar amount without any multiplier is

2    $141,183.63, which consists of $122,551.13 in fees generated by the Spivak Law Firm and

3    $18,632.50 in fees generated by the United Employees Law Group.  (Doc. No. 36-2 at 15.)

4    Under this calculation, class counsel's lodestar exceeds the requested one-third of the gross

5    settlement amount by $116,350.63 and results in a multiplier of 0.18.  (*Id.*)  In support of this

6    lodestar calculation, the Spivak Law Firm has submitted an accounting of the hours billed by

7    various firm employees, tasks completed by those employees, and applicable billing rates.  (*See*

8    Doc. No. 36-2 at 94–108.)  The Spivak Law Firm employees who have worked on this matter

9    include:  first-year secretaries with hourly rates of $150; a Juris Doctor with an hourly rate of

10   $150; a law clerk with an hourly rate of $200; ninth- through fifteenth-year paralegals with hourly

11   rates ranging from $200 through $300; associate attorneys with rates ranging from $250 through

12   $300; and twenty-third- through thirty-sixth-year attorneys with rates ranging from $650 through

13   $750.  (*Id.*)  The court finds that these rates are fair and reasonable in this case.  *See Singh v.*

14   *Roadrunner Intermodal Servs., LLC*, No. 1:15-cv-01497-DAD-BAM, 2019 WL 316814, at *10

15   (E.D. Cal. Jan. 24, 2019) (accepting hourly rates of between $370 and $495 for associates, and

16   $545 and $695 for senior counsel and partners); *Maciel v. Bar 20 Dairy, LLC*, No. 1:17-cv-

17   00902-DAD-SKO, 2021 WL 1813177, at *10 (E.D. Cal. May 6, 2021) (accepting hourly rate of

18   $150 for legal secretaries); *Mathein v. Pier 1 Imports (U.S.), Inc.*, No. 1:16-cv-00087-DAD-SAB,

19   2018 WL 1993727, at *11 (E.D. Cal. Apr. 27, 2018) (accepting hourly rates of between $475 and

20   $575 for associates, and $675 and $750 for senior counsel and partners); *Emmons v. Quest*

21   *Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8 (E.D. Cal. Feb. 27, 2017)

22   (accepting hourly rates of between $330 and $550 for associates, and $500 and $720 for partners).

23   By contrast, the declaration by attorney Haines provides for an hourly rate of $725, but merely

24   lists his hours spent on this matter under two entries, one for 6.5 hours and one for 19.2 hours,

25   without listing the dates these hours were worked or the specific tasks performed on each date.

26   (Doc. No. 36-3 at 3.)  Without more detailed information, the court is not able to assess the

27   reasonableness of the United Employees Law Group's contributions to the total lodestar amount.

28   Nonetheless, even after adjusting the lodestar downward to remove the entirety of the lodestar

1  fees from the United Employees Law Group, the lodestar for the Spivak Law Firm's work on this

2  case alone is $122,551.13, well above the $24,833.00 requested in attorneys' fees here.

3  For the reasons set forth above, the court concludes that the lodestar cross-check supports the

4  requested award of $24,833.00 in attorneys' fees, an amount equal to one-third of the gross

5  settlement fund in this case. Therefore, the court will approve an award of $24,833.00 in

6  attorneys' fees.

7  **B.    Costs and Expenses of Class Counsel**

8         Additionally, class counsel seeks to recover the costs and expenses advanced while

9  prosecuting this litigation. Such awards "should be limited to typical out-of-pocket expenses that

10  are charged to a fee paying client and should be reasonable and necessary." *In re Immune*

11  *Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These can include

12  reimbursements for: "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone,

13  and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class

14  action notices; 8) experts, consultants, and investigators; and 9) mediation fees." *Id.*

15         Here, class counsel request reimbursement in the amount of $3,983.01. (Doc. No. 36 at 3;

16  *see also* Doc. No. 36-2 at 110–11.) The court has reviewed class counsel's declarations and finds

17  all the charges incurred to be reasonable. Accordingly, the court will approve the reimbursement

18  of costs and expenses in the amount requested.

19  **C.    Incentive Award**

20         Courts frequently approve "service" or "incentive" awards in class action cases. *West*

21  *Publ'g Corp.*, 563 F.3d at 958–59. Generally speaking, incentive awards are meant to recognize

22  the effort of class representatives "for work done on behalf of the class, to make up for financial

23  or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

24  willingness to act as a private attorney general." *Id.* The district court evaluates each award

25  individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the

26  interests of the class, the degree to which the class has benefitted from those actions, . . . the

27  amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e]

28  /////

1  fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d

2  1004, 1016 (7th Cir. 1998)).

3      The courts of the Ninth Circuit typically find an award of $5,000 to be "presumptively

4  reasonable." *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000)

5  (endorsing $5,0000 service awards to named representatives); *Bellinghausen v. Tractor Supply*

6  *Co*., 306 F.R.D. 245, 246 (N.D. Cal. 2015) (collecting cases); *In re Toys R Us-Del., Inc. FACTA*

7  *Litig.*, 295 F.R.D. 438, 470–72 (C.D. Cal. 2014) (awarding plaintiffs $5,000 each "consistent with

8  the amount courts typically award as incentive payments").  Higher amounts can be appropriate,

9  such as in employment actions, where a plaintiff risks retaliation or blacklisting as a result of

10  suing her employer.  *See, e.g.*, *Buccellato v. AT&T Operations, Inc.,* No. 5:10-cv-00463-LHK,

11  2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011).

12      Here, plaintiff Avery seeks an incentive award of $5,000 for his service in this action.

13  (Doc. No. 36-1 at 23.)  Plaintiff contends that this amount is fair and reasonable compensation for

14  the risks and efforts he has undertaken as the representative plaintiff in this action.  (Doc. No. 36-

15  4 at 4.)  He submits that he provided defendant with a release of any and all claims he may have

16  against defendant, a "significant sacrifice."  (Doc. Nos. 36-1 at 23; 36-4 at 4.)  In addition, he

17  states that the requested incentive award "is not equal to the harm to [his] future career prospects"

18  that may arise from there being an existing public record of him bringing a class action complaint

19  against his employer.  (Doc. No. 36-4 at 6.)  Moreover, plaintiff Avery undertook the risk that if

20  the case was lost, he could have been ordered to pay defendant's costs and attorneys' fees.  (*Id.*)

21  Plaintiff's declaration also states that he has demonstrated his commitment to the settlement class

22  in this case by, *inter alia*, "retaining experienced counsel, providing counsel with documents and

23  extensively speaking with them to assist in identifying the claims asserted in this case, submitting

24  to two full days of examination by deposition, . . . contacting the Settlement Class Members and

25  gathering information from them, [and] meaningfully participating in the mediation and

26  subsequent negotiations" that resulted in the settlement.  (*Id.* at 5–6.)  Specifically, plaintiff

27  contends that over the past four-and-a-half years, he spent 56.19 hours working on the case.  (*Id.*

28  at 11.)

Because the incentive award requested is for a "presumptively reasonable" amount, and in light of plaintiff's supporting declaration detailing his assistance with this case, the court finds that the requested incentive payment of $5,000 to plaintiff Avery is fair and reasonable and does not destroy the adequacy of class representation in this case. Accordingly, the court will award the incentive payment as requested.

**D.      Settlement Administrator Costs**

As noted above, the court has approved the appointment of Simpluris as the settlement administrator in this action. According to the declaration of Christina Fowler, Case Manager for Simpluris, the total cost for administration of this settlement, including fees incurred and future costs for completion, is $4,000.00. (Doc. No. 36-2 at 159.) The court finds these administration costs reasonable and will direct payment in the requested amount.

**CONCLUSION**

For the reasons stated above:

1.      Plaintiff's motion for final approval of the class action settlement (Doc. No. 41) is granted, and the court approves the settlement as fair, reasonable, and adequate;

2.      Plaintiff's motion for an award of attorneys' fees and costs, incentive award, and settlement administrator costs (Doc. No. 36) is granted;

3.      The court awards the following sums:

      a.      Class counsel shall receive $24,833.00 in attorneys' fees and $3,983.01 in expenses;

      b.      Plaintiff Avery shall receive $5,000.00 as an incentive payment;

      c.      Simpluris shall receive $4,000.00 in settlement administration costs; and

      d.      The parties shall direct payment of 75% of the settlement allocated to the PAGA payment, or $3,750.00, to the LWDA as required by California law, and the remainder of the PAGA payment, $1,250.00, shall be included in the net settlement fund;

4.      The parties are directed to effectuate all terms of the settlement agreement and any deadlines or procedures for distribution set forth therein;

5.     This action is dismissed with prejudice in accordance with the terms of the parties' amended settlement agreement, with the court specifically retaining jurisdiction over this action for the purpose of enforcing the parties' settlement agreement; and

6.     The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   __September 23, 2022__          _____

UNITED STATES DISTRICT JUDGE

26